## SETTLEMENT AND RELEASE AGREEMENT

Plaintiff, Marqui Stith Sr., on behalf of himself and the Settlement Class defined below, on the one hand, and Defendant TIPS East, LLC ("Defendant"), on the other hand, agree to a settlement, subject to approval as discussed below, through this Settlement and Release Agreement ("Settlement" or "Agreement"):

## I.
## DEFINITIONS

In addition to other terms defined in this Agreement, the terms below have the following meaning in this Agreement:

1.     "Action" means the lawsuit entitled Marqui Stith Sr. v. Tips East, LLC d/b/a "Domino's Pizza," et al (Case No. 1:21-cv-436-LO-IDD), pending in the U.S. District Court for the Eastern District of Virginia.

2.     "Administrator" means the third-party claims administrator mutually agreed-upon by the Parties, whose costs will be paid out of the Maximum Settlement Amount.  The Parties have selected CAC Services Group, LLC.

3.     "Claim Form" means the approved claim form and consent to join that Settlement Class Members must complete, sign and timely return to receive a Settlement payment from the FLSA Claim Fund, as set forth herein in the form of Exhibit 2 hereto.

4.     "Class Counsel" means the law firms of Zipin, Amster & Greenberg, LLC and Forester Haynie PLLC.

5.     "Class Representative" or "Plaintiff" or "Named Plaintiff" means Marqui Stith Sr.

6.     "Court" means the U.S. District Court for the Eastern District of Virginia.

7.     "Defendant" means Tips East, LLC.

8.     "Defendant's Counsel" means the law firm of Ballard Spahr LLP (DC).

9.    "Effective Date" means the day the Settlement is Final as defined below.

10.    "Exclusion Letter" means a letter that Settlement Class Members must complete, sign and timely return to exclude themselves from this Settlement, setting forth their name, the last four digits of their Social Security number, and a statement that they request exclusion from the Settlement Class and do not wish to participate in the Settlement.

11.    "Final" means that the Court has granted final approval of the Settlement without modification and either: (a) the applicable date for seeking appellate review of the Court's approval of the Settlement has passed without a timely appeal; (b) an appellate court has rendered a final decision or judgment affirming the Court's final approval of the Settlement without modification, and the time for any further appeal has expired; or (c) any timely appeal has been dismissed.

12.    "Final Approval Hearing" means the hearing that the Court conducts to determine whether to finally approve and implement the Settlement.  In no event shall the Final Approval Hearing be scheduled earlier than 90 days after the Class Action Fairness Act ("CAFA") notices are served on the appropriate federal and state government officials as described below.

13.    "FLSA Class Member" means (1) a Settlement Class Member who has returned a valid and timely Claim Form; thereby, authorizing distribution from the FLSA Claim Fund and in exchange for releasing claims under the FLSA, (2) Named Plaintiff Marqui Stith Sr., and (3) Pre-Mediation Opt-In Plaintiff Christopher Schultz.

14.    "Maximum Settlement Amount" means the maximum amount Defendants could be obligated to pay under this Agreement, $450,000.00.

15.    "Net Settlement Amount" for purposes of paying claims to Class Members pursuant to the Settlement shall be the amount of $275,000.00.

16.    "Notice" means the approved notice to be mailed to Settlement Class Members which, following the Preliminary Approval of the Settlement, will be mailed to each Settlement

SETTLEMENT AND RELEASE AGREEMENT

Class Member explaining the Settlement terms and the claims process, as set forth herein in the form of Exhibit 1 hereto.

17.    "Pre-Mediation Opt-In Plaintiff(s)" or "Early Opt-In Plaintiff(s)" means Christopher Schultz.

18.    "Parties" means Plaintiff, Marqui Stith Sr., as well as Opt-in Plaintiff Christopher Schultz, together with Defendant Tips East, LLC, and "Party" means any of the Parties.

19.    "Participating Class Members" means FLSA Class Members and Rule 23 Class Members.

20.    "Preliminary Approval" means that the Court has preliminarily approved the settlement and authorized the issuance of Notice to Settlement Class Members, as set forth herein.

21.    "Release Period" means the three-year period preceding through the date of preliminary approval of the settlement.

22.    "Released Parties" means TIPS East, LLC, and each of its former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, attorneys and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former members, owners, officers, directors, employees, partners, shareholders, attorneys and agents, and any other successors, assigns, or legal representatives.

23.    "Rule 23 Class Members" means Settlement Class Members who have not timely submitted a request to be excluded from the Settlement Class.

24.    "Settlement Class" or "Settlement Class Member(s)" means all delivery drivers who worked for Defendants at stores located in North Carolina or Virginia during the Release Period, entitling them to receive notice of this Settlement.

25.    "Service Award(s)" means the payment(s) to the Class Representative and/or Opt-In Class Representatives as set forth below.

1   26.   "Settlement Payment" means the distribution of the Net Settlement Amount to the

2   FLSA and Rule 23 Class Members as described below.

3   27.   "Total Settlement Amount" means the total gross settlement amount for purposes of

4   calculating the amounts necessary to fund distributions to the Settlement Class Members under this

5   Agreement, specifically $450,000.00.

6

7   ## II.
    ## RECITALS

8   28.   On or about April 8, 2021, legal counsel for Marqui Stith Sr. filed a Complaint

9   alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and common

10  law claims under state law.  Plaintiff was employed by Defendant alleges that he and other similarly

11  situated pizza delivery drivers were not properly reimbursed for mileage and other expenses related

12  to the business use of their personal vehicles.  Christopher Schultz was also employed by Defendant

13  as a pizza delivery driver and later joined as an early opt-in plaintiff.

14  29.   Prior to mediation, the Parties engaged in informal discovery, including exchanging

15  production of data, including detailed class and collective damage calculations and settlement

16  demands.

17  30.   On April 7, 2022, the Parties mediated before the Honorable J. Bradford Stillman

18  (ret.) (the "Mediator"), an experienced wage and hour class and collective action mediator.  At the

19  mediation, the Parties settled this putative class and collective action on the terms set forth within

20  this Agreement.

21  31.   In conjunction with and to facilitate this Settlement, Plaintiff subsequently amended

22  his complaint to include alleged violations of the state laws of North Carolina and Virginia and, for

23  settlement purposes only, seeks certification on a class-wide basis.

24  32.   Based on their analysis and evaluation of relevant factors, and recognizing the risks

25  of continued litigation, including the possibility that the Litigation, if not settled now, might result

4

SETTLEMENT AND RELEASE AGREEMENT

in no recovery whatsoever for the Plaintiff, might result in a recovery less favorable to the Plaintiff, might result in a recovery more favorable to the Plaintiff, and the likelihood that any recovery for any portion of the damages claimed would not occur for several years, counsel Named Plaintiff and Plaintiff's Counsel are satisfied that the terms and conditions of the Agreement are fair, reasonable, and adequate and that this Agreement is in the best interest of the Class Members.

## III.
## TERMS OF SETTLEMENT

33.   <u>Condition Precedent</u>.   The Settlement and the payments described herein are conditioned upon passing of the Effective Date and the Settlement becoming Final.

34.   <u>Maximum Settlement Amount</u>:   Defendant's total aggregate payments under this Agreement shall under no circumstances exceed $450,000.00.

35.   <u>Class Counsel's Attorneys' Fees, Costs, and Expenses</u>:   Plaintiff and/or Class Counsel will request, and Defendant will not oppose, a payment from the Total Settlement Amount for attorneys' fees for all the work already performed and all the work remaining to be performed in this Action, and for costs and expenses incurred by Class Counsel in prosecuting the Action and implementing the terms of the Settlement with Class Counsel fees not to exceed $150,000, and a payment for Class Counsel costs not to exceed $10,000.00. The award of Class Counsel's attorneys' fees, costs, and expenses approved by the Court shall be wired to the Administrator within fifteen (15) days after the Effective Date of the settlement, as set forth below.   The Parties agree that any reduction in the amount of attorneys' fees, costs, and/or expenses approved for Class Counsel shall not be a basis for rendering the entire Settlement voidable or unenforceable.

36.   <u>Service Awards to Class Representative</u>:   Subject to the Court's approval, Plaintiff and Pre-Mediation Opt-In Plaintiff Christopher Schultz shall be paid service payments to be paid from the Maximum Settlement Amount in a total amount not to exceed $5,000.00 ($3,500 to Plaintiff and $1,500 to Pre-Mediation Opt-In Plaintiff), for service as Class Representative and Class

Representatives, and in consideration for the General Release of Claims as described below, in addition to any payments they may otherwise receive as FLSA Class Members. Defendant will not contest Plaintiff's and Pre-Mediation Opt-In Plaintiff's petition for such payment. The service payments to the Class Representative approved by the Court shall be wired to the Administrator within fifteen (15) days after the Effective Date of the settlement, as set forth below. The service payments shall be treated as non-employee income, and the Opt-In Class and Class Representatives shall be issued an IRS Form 1099 in the amount of their respective service payment. The Parties agree that any reduction in the amount of the Opt-In Class and/or Class Representatives' requested service payments shall not be a basis for rendering the entire Settlement voidable or unenforceable. If the Court approves service payments of less than the amount sought the remainder will be added to and distributed through the Rule 23 Fund.

37.   <u>Settlement Administration Costs</u>:  All costs incurred in administering the Settlement (including retaining the Administrator who will handle the mailing of notices (including class notices and CAFA notices), forwarding of return notices, processing of claim forms, and mailing of the individual checks to Participating Class Members) shall be paid from the Maximum Settlement Amount, up to $10,000.00.  Any remaining and unused funds shall revert to the Rule 23 Fund, to be distributed as described below.

38.   <u>Distribution to Participating Class Members</u>:  Within ten (10) calendar days after receipt of the Final Class Data List (as set forth below), the Parties shall calculate each Participating Member's potential Settlement Payment ("Potential Settlement Payment"), as follows.

(a)   The FLSA Settlement Fund Payments will be calculated in the following manner:

- For each Settlement Class Member, the total number of his/her recorded miles making deliveries for Defendant during the three-year period preceding the date the Court grants preliminary approval of the Agreement shall be his/her "Individual

Miles." The aggregate of all Individual Miles among all Settlement Class Members shall be the "Class Miles."

- Each Settlement Class Member's Individual Miles shall be divided by the Class Miles to obtain his/her "Payment Ratio."

- Each Settlement Class Member's Payment Ratio shall be multiplied by the Net Settlement Amount to arrive at his/her Potential FLSA Settlement Fund Payment.

(b)     The Rule 23 Fund Payments will be determined by subtracting the amounts claimed by the FLSA Claimants from the Net Settlement Amount. This remaining Rule 23 Fund will then be divided by the number of Rule 23 Class Members for a minimum payment that is anticipated to be at least $50.00.

(c)     Within ten (10) calendar days after receipt of the funds for Participating Class Members, the Administrator shall mail the settlement payments to the Participating Class Members as described herein.

(d)     Tax Allocation of Settlement Payments and Service Payment: One-hundred percent (100%) of the settlement payments made to Participating Class Members will be treated as non-taxable payments in reimbursement for incurred job expenses. No payroll or tax withholdings will be taken from these payments. The Participating Class Members will be responsible for correctly characterizing their respective settlement payments for tax purposes and paying any taxes owing on said amounts (including without limitation, any interest or penalties required by law). Any tax obligation(s) arising from any settlement payments will be the sole responsibility of the Participating Class Member who received the payment at issue. Participating Class Members must indemnify, defend, and hold Defendant harmless for any federal, state, and local tax liability, including taxes, interest, penalties, or the like, and required withholdings, which may be or is asserted against or imposed upon Defendant by any taxing authority based upon any failure to pay any taxes due on the

SETTLEMENT AND RELEASE AGREEMENT

amounts being paid to the Participating Class Members pursuant to this Agreement; provided, however, that, without making any representation or warranty concerning the tax treatment of any sums to be paid under this Agreement, and provided that nothing herein is intended as, and shall not be construed as, any representation or admission by Defendant that any employer's share of income taxes shall be owed with respect to any such sums, the Parties acknowledge and agree that the indemnification obligations of the Participating Class Members hereunder shall not extend to any potential employer's share of employment taxes owed by Defendant, if any. None of the Released Parties nor any of their representatives have made any warranty concerning the tax treatment of any sums to be paid under this Agreement, and Participating Class Members have not relied on any such representation in determining the tax treatment of such sums.  The Administrator will agree to manage all tax liabilities for all Parties and their Counsel as part of administration of the QSF.

(e)   None of the payments described in this Agreement shall be subject to matching contributions or included as benefits-eligible earnings under any benefit plan or policy of the Defendant or any of its current or former parent companies, subsidiaries, or affiliates.  Further, there shall be no recalculations of employee benefits or incentives based upon any amounts paid out to current or former employees as part of the Agreement.

(f)   None of the payments and/or distributions detailed in this Section shall be made until the dates specifically called for in this Agreement.

39.   Conflict of Terms:  In the event of a conflict between the terms set forth in any communication (including, without limitation, the Notice and Claim Form) and this Agreement, the terms of this Agreement shall control.

## IV.
## SETTLEMENT PROCEDURES

40.   Motion for Preliminary Approval:  Within ten (10) business days after the execution of this Agreement by all Parties, Plaintiff shall file a motion for preliminary approval of the

Settlement (which shall not contain the monetary terms contained herein), applying to the Court for the entry of an Order that will be agreed upon by the Parties prior to submission:

(a)     Scheduling a fairness hearing on the question of whether the proposed Settlement should be approved as fair, reasonable, and adequate as to the Settlement Class;

(b)     Approving as to form and content the proposed Notice to the Settlement Class;

(c)     Approving the proposed method of requesting exclusion from the Settlement;

(d)     Directing the mailing of the Notice and Claim Form by first-class mail to the Settlement Class Members;

(e)     Preliminarily approving the Settlement; and

(f)     Preliminarily certifying (for settlement purposes only) the Settlement Class for the purposes of calculating the Potential Settlement Payments for the Class Members.

41.     CAFA Notices:  The Administrator shall send notice to the appropriate federal and state officials in accordance with CAFA within ten (10) days after Plaintiff files the motion for preliminary approval of the Settlement.  The Administrator shall be responsible for any and all other CAFA notices or obligations required by law with respect to this Agreement, where the notices shall be approved by Defendant's counsel.

42.     Notice to the Class:

(a)     Within seven (7) calendar days after Plaintiff files the motion for preliminary approval of the Settlement, Defendant will provide to the Administrator the names, last known addresses, last known telephone numbers, and the last four digits of the social security numbers of the Settlement Class Members, along with data indicating the number of miles driven for each Settlement Class Member from September 1, 2018 through September 1, 2021 ("Initial Class Data List"). Defendant will provide Class Counsel a copy of the Initial Class Data List that does not include the contact information or social security numbers of the Settlement Class Members. This

data shall be based on Defendant's payroll and/or other business records and shall be used to prepare the CAFA notices. Within ten (10) calendar days following the Court's Order granting Preliminary Approval of the Settlement, Defendant will supplement the Initial Class Data List to provide data for employees who worked from September 1, 2021 through the date the Court grants Preliminary Approval ("Supplemental Class Data List") (together with the Initial Class Data List, "Final Class Data List").

(b)     Within ten (10) calendar days after receipt of the above Final Class Data List from Defendant, to the extent practicable, the Administrator shall consult the National Change of Address Registry, and mail to all Settlement Class Members, by first-class U.S. mail the Notice Form ("the Notice Packet").

43.     FLSA Fund Opt-In Process:

(a)     Settlement Class Members shall have 50 calendar days after the initial mailing of the Notice Packets to return their Claim Forms to the Administrator ("Claims Period Deadline") to opt-in to the FLSA Settlement. Claim Forms may be submitted to the Administrator via U.S. mail postmarked on or before the Claims Period Deadline or sent by fax or e-mail on or before the Claims Period Deadline. In the case of mailed Claim Forms, the postmark date will be deemed the date of submission.

(b)     If a Settlement Class Member submits a timely Claim Form that is rejected by the Administrator as deficient in some material respect (for example, the Settlement Class Member failed to sign the Claim Form), the Administrator will notify the Settlement Class Member in writing of the basis for the deficiency and give the Settlement Class Member a reasonable opportunity to cure the deficiency, including a follow-up telephone call, if necessary. Class Counsel and/or the Administrator also will provide assistance to the Settlement Class Member if requested. Settlement Class Members shall have the greater of fifteen (15) calendar days after notification of the

deficiency, or until the Claims Period Deadline, to cure the deficiency. to provide any objection to the Settlement or request exclusion from the Settlement. As they have already consented to join this matter under the FLSA, Named Plaintiff and Early Opt-In Plaintiff will not be required to submit a claim form to be receive FLSA funds.

(c)     The Administrator shall provide the Parties with a weekly update of the number of any opt-ins, opt-outs and/or objections, and provide copies of any Claims Forms.

(d)     Within ten (10) days of the Notice Period Deadline, the Administrator shall provide to the Parties any opt-outs and/or objections not provided in accordance with subparagraph (b) above, along with a final list of all Participating Class Members and each Participating Class Member's settlement payment (hereinafter "Final Payment List").  The parties shall agree on the Final Payment List.

(e)     To the extent that 5% or more of the Settlement Class Members opt out of the Rule 23 Class, Defendant has the right, in its sole discretion, to cancel the Agreement in its entirety and it shall be null and void, with the Parties returning to the *status quo ante* and maintaining all rights and arguments existing prior to the Agreement.  The Parties will not take any action to encourage Class Members to opt out.

(f)     Within fifteen (15) days of the Effective Date or agreement on the Final Payment List, whichever is later, Defendant shall wire to the QSF established by the Administrator an amount sufficient to pay all Participating Class Members on the Final Payment List in the amount provided therein, Class Counsel's approved attorneys' fees and costs (including Administrator costs), and the Opt-In Class and Class Representatives' approved Service Awards.

(g)     Within ten (10) days of receipt of the settlement funds, the Administrator shall issue checks to Class Counsel, Class Representative and Opt-In Class Representative, and the

1    Participating Class Members, as set forth herein.  The Administrator shall establish and administer

2    all settlement payments out of a QSF.

3

     (h)       Each Rule 23 Class Member's settlement check shall include the following release

4

language on the back of the check:

5

6               By signing and cashing or otherwise negotiating this check I release all claims
              or causes of action I have against the Released Parties in the lawsuit styled

7               *Marqui Stith Sr. v. Tips East, LLC d/b/a "Domino's Pizza,"* Case No. 1:21-cv-
              436-LO-IDD (the "Action") for the claims arising out of or relating to facts

8               asserted in the Action, including claims arising under North Carolina and
              Virginia wage and hour law or common law, or any similar state, municipal, or

9               local laws, such as mileage reimbursement claims, meal and rest break claims,
              dual jobs/80-20 claims, tip credit claims, and notification, posting and record

10              claims.

11

     (i)        Each FLSA Class Member's settlement check shall include the following release

12

language on the back of the check:

13

14              By signing and cashing or otherwise negotiating this check I release all claims
              or causes of action I have against the Released Parties in the lawsuit styled

15              *Marqui Stith Sr. v. Tips East, LLC d/b/a "Domino's Pizza,"* Case No. 1:21-cv-
              436-LO-IDD (the "Action") for the claims arising out of or relating to facts

16              asserted in the Action, including claims arising under the FLSA, North Carolina
              and Virginia wage and hour law or common law, or any similar federal, state,

17              municipal, or local laws, such as mileage reimbursement claims, meal and rest
              break claims, dual jobs/80-20 claims, tip credit claims, and notification, posting

18              and record claims. I understand and agree that the negotiated check shall
              constitute evidence of my consent to join the Lawsuit pursuant to §216(b) of

19              the FLSA.

20

21      44.      <u>Records and Disputes</u>:   If a Settlement Class Member wishes to dispute the

22 calculation of his or her Potential Settlement Payment, the Settlement Class Member may so notify

23 the Administrator or Class Counsel and shall produce any supporting information and/or evidence

24 available to the Settlement Class Member. The Parties will meet and confer in an attempt to resolve

25 any disputes and will endeavor to resolve the issue informally. If a person believes that he or she

26 was wrongly excluded from being a member of the Settlement Class, the Parties will endeavor to

27

28

resolve the issue informally. Absent an agreed-upon resolution, the disputes shall be referred to the Mediator.

45. <u>Objections to the Settlement</u>: Settlement Class Members who wish to object to the Settlement must not exclude themselves from the Settlement and must serve on the Administrator, not later than thirty (30) calendar days after the date that the Administrator first mails the Notice Packets ("Objection Deadline"), a written statement objecting to the Settlement and setting forth the grounds for the objection, as explained further in the Notice. This statement also must indicate whether the Settlement Class Member intends to appear and object to the Settlement at the Final Approval Hearing. The failure to so indicate will constitute a waiver of the right to appear at the hearing subject to the Court's rulings and procedures. A Settlement Class Member who does not submit an objection in the manner and by the deadline specified above shall be deemed to have waived all objections and will be foreclosed from making any objection to the Settlement, whether by appeal or otherwise, absent a contrary order of the Court.

46. <u>Rule 23 Fund Opt-Out Process</u>:

(a) Settlement Class Members who wish to exclude themselves from the Settlement (opt out of the Settlement) must submit to the Administrator, not later than 50 calendar days after the date that the Administrator first mails the Notice Packets ("Opt-Out Deadline"), an Exclusion Letter requesting that he or she be excluded from the Settlement Class. Exclusion Letters may be submitted to the Administrator via U.S. Mail or fax. A Settlement Class Member who does not submit a valid and timely Exclusion Letter in the manner and by the deadline specified above shall be bound by all terms and conditions of the Settlement, releases and by the Judgment, regardless of whether he or she submits a Claim Form. A Settlement Class Member who timely submits a valid Exclusion Letter shall not participate in, or be bound by, the Settlement or the Judgment in any respect. To be valid, Exclusion Letters must be submitted to the Administrator by the Opt-Out Deadline. Persons who

submit an Exclusion Letter shall not be permitted to file objections to the Settlement or appear at the Final Approval Hearing to voice any objections to the Settlement.

(b)    All Settlement Class Members who do not submit a timely Exclusion Letter will receive payment from the Fund and shall be bound by all of the terms of the Settlement, including without limitation, the applicable release set forth in the Settlement.

47.   <u>Final Approval</u>:

(a)    At least ten (10) calendar days prior to the Final Approval Hearing, Plaintiff will file with the Court a motion for final approval of the Settlement and a memorandum in support of his motion. Class Counsel will prepare the motion for final approval and will provide Defendant's Counsel sufficient opportunity to review and agree on the content of the motion before it is filed.

(b)    At the time the motion for final approval of the Settlement is filed, Class Counsel or the Administrator shall provide the Court a report specifying the due diligence that it has undertaken with regard to the mailing of the Notice; and reporting (to date) on the number of claims, objections, disputes (and status), and opt-outs submitted.

(c)    Not later than five (5) court days before the Final Approval Hearing, the Parties may file, jointly or separately, a reply in support of their joint motion for final approval of the Settlement, in the event any opposition to the joint motion for final approval has been filed. Likewise, Class Counsel may file a reply in support of the motion for approval of Class Counsel's attorney's fees and costs, in the event any opposition to the motion for such attorneys' fees and/or costs has been filed.

(d)    At or before the Final Approval Hearing, the Parties will present a Judgment for the Court's entry. After entry of the Judgment, the Court will have continuing jurisdiction over the Action and the Settlement solely for purposes of enforcing the Settlement, addressing settlement administration matters, and addressing such post-Judgment matters as may be appropriate under

court rules or applicable law, including issues relating to the administration of the Contingent Fund as may be appropriate under court rules or applicable law.

(e)     Upon the filing of the motion for final approval of the Settlement, the Parties will submit a proposed Order in a mutually agreeable form for purposes of settlement:

- Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

- Approving Class Counsel's motion for attorneys' fees and expenses;

- Approving the Class Representative's service payment;

- Approving the Opt-In Class Representatives' service payments;

- Permanently enjoining all Settlement Class Members (other than those who filed timely and valid Exclusion Letters) from prosecuting against the Released Parties (defined below) any and all of the Settlement Class Members' Released Claims (defined below);

- Permanently enjoining the Class Representative from prosecuting against the Released Parties any and all of the Class Representative's Released Claims (as defined below); and

- Dismissing the Action with prejudice.

48.     <u>Returned Checks</u>:   If a settlement payment check envelope is returned as undeliverable, the Administrator will use commercially reasonable steps necessary to locate an updated mailing address for that Settlement Class Member, including without limitation, enhanced skip tracing methods, calling and/or emailing the individual.

49.     <u>Uncashed Checks</u>:  If a Participating Class Member has not cashed his or her check within one-hundred eighty (180) calendar days after issuance, such check will become stale and the unclaimed funds distributed to Defendant.

SETTLEMENT AND RELEASE AGREEMENT

**V.**
**RELEASE OF CLAIMS**

50.     FLSA Class Members' Released Claims: Upon the Effective Date of the Settlement, the FLSA Class Members (those who submit valid and timely Claim Form) will release and forever discharge Defendant, and each of its former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, attorneys and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, attorneys and agents (including Rick Clark and Zachary Barrett), and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for the three-period prior  to through the date  the Court grants preliminary approval of the Settlement ("Release Period"), including claims that arise under the FLSA, North Carolina and Virginia wage and hour law or common law, or any similar federal, state, municipal, or local laws, which arise out of, are based on, or encompass facts asserted in the Action, including claims such as expense reimbursement claims; meal and rest break claims; dual job/80-20 claims; tip credit claims; and notification, posting and record claims. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for *res judicata* purposes shall be co-extensive with this release of claims (collectively, the "Released Claims").

51.     Rule 23 Class Members' Released Claims: Upon the Effective Date of the Settlement, the Rule 23 Class Members (Settlement Class Members other than those who submit valid and timely Exclusion Letters) will release and forever discharge Released Parties), from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for the period from three years prior to through the date  the Court grants preliminary approval of the Settlement  to ("Release Period"), including claims that arise under,

16

North Carolina or Virginia wage and hour law or common law, or any similar state, municipal, or local laws, which arise out of, are based on, or encompass facts asserted in the Action, including claims such as mileage reimbursement claims; meal and rest break claims; dual job/80-20 claims; tip credit claims; and notification, posting and record claims. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for *res judicata* purposes shall be co-extensive with this release of claims (collectively, the "Released Claims").

52.   <u>Release of Fees and Costs</u>:  Plaintiff, on behalf of himself and the Settlement Class Members, hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that she has or may have against Defendant for attorneys' fees, costs, or expenses associated with this Action, including but not limited to those attorneys' fees, costs, or expenses associated with Class Counsel's representation of the Plaintiff and Settlement Class Members in this Action. Plaintiff further understands and agrees that any fees and costs payment provided for herein will be the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Class Counsel's representation of Plaintiff and the Settlement Class Members in this Action.

53.   <u>General Release by Class Representative</u>:

(a)   In exchange for the Service Award described herein, the Class Representative and Opt-In Class Representative agree to a General Release of claims:

For and in consideration of the required acts and promises set forth in the text of this Agreement, Marqui Stith Sr. and Christopher Schultz, each for themselves and their respective heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily release and forever discharge Released Parties from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, accrued to date,

which each of them has or might have as a result of, or in any way connected with their employment or separation of employment with Defendants, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States, the Commonwealth of Virginia and the state of North Carolina, all other Virginia and Colorado state and local laws and all other federal laws including but not limited to those relating to discrimination, harassment, retaliation, or any claims of breach or violation of public policy, wrongful or constructive discharge, retaliatory discharge, breach of contract.  Stith and Schultz each promise, covenant and agree, to the fullest extent permitted by law, that they will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or liabilities which are released by this Agreement. Notwithstanding the above, nothing in this release is intended to release or waive rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; the right to file a charge with or participate in an investigation conducted by an administrative agency (although Stith and Schultz agree that they will accept to benefit or compensations from any

such charge(s) filed); the right to enforce this Agreement; any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits.

(b)     The Parties agree that any refusal by the Court to approve of the General Release by the Class Representative and/or Opt-In Class Representatives as set forth in this paragraph shall not be a basis for rendering the entire Settlement voidable or unenforceable. The Parties further agree that any Service Award is contingent upon the execution of and acceptance of this Agreement and General Release and any refusal by any Opt-In Plaintiff to agree to a General Release shall not be a basis for rendering the entire Settlement voidable or unenforceable.

## VI.
## ADDITIONAL PROVISIONS

54.     <u>Signatories</u>:

(a)     The respective signatories to the Settlement represent that he, she, or they are fully authorized to enter into this Settlement and bind to its terms and conditions the respective entities for which the person is signing as shown on the signature line.

(b)     The Parties agree that because the Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Class Member execute this Settlement. The Notice will advise all Settlement Class Members of the binding nature of the release. Excepting only the Settlement Class Members who submit a valid and timely Exclusion Letter, this Agreement shall have the same force and effect as if it were executed by each Settlement Class Member.

55.     <u>Cooperation to Implement Settlement</u>: The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to executing such documents and taking such other actions as may reasonably be necessary to implement the terms of the Settlement.  The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of the Settlement.

SETTLEMENT AND RELEASE AGREEMENT

56.    Disputes: Any dispute between the Parties concerning the interpretation or implementation of this Agreement will be resolved by the Mediator, who shall retain jurisdiction for resolving all disputes. Prior to any such resort to the Mediator, counsel for the Parties will confer in good faith to resolve the dispute. If the Parties are unable to resolve the dispute themselves, the dispute will be submitted to the Mediator, unless the Parties agree otherwise.  In the event that the Mediator is not willing or able to serve, counsel for the Parties shall select as alternate mediator.

57.    No Prior Assignments: The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

58.    No Admission of Liability and Inadmissibility of Settlement:

(a)    Defendant denies liability to Stith, Schultz, Opt-In Plaintiffs, and the Settlement Class for any claim or cause of action. Defendant has denied and continues to deny each of the claims and contentions alleged by Plaintiff in the Action. Defendant has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action.  Defendant also has denied and continues to deny the allegations that the Settlement Class Members have suffered damage or that the Settlement Class Members were harmed by the conduct alleged in the Action. By entering into this Agreement, Defendant in no way admits to the suitability of this Action for class or collective action litigation other than for purposes of settlement.

(b)    Settlement of the Action and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant, or of the truth of any of the factual allegations in the Complaint filed in the Action or for any other

purpose; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative, or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class or collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement and any exhibit hereto are settlement documents and shall be inadmissible in any proceeding for any reason, except a proceeding to enforce the terms of this Agreement.

59. <u>Fair, Adequate, and Reasonable Settlement</u>: The Parties agree that the Settlement is fair, adequate, and reasonable, and will so represent it to the Court; provided, however, that nothing herein is intended to, and shall not be construed to, waive the confidentiality of the Parties' settlement or settlement negotiations and discussions pursuant to the Federal Rules of Evidence.

60. <u>Waiver of Appeals</u>: The Parties agree to waive all appeals from the Court's final approval of this Settlement, unless the Court materially modifies the Settlement; provided, however, that Plaintiff may appeal any reduction in the amount of Class Counsel's fees and expenses and/or the service payments to the Class Representative or Opt-In Class Representatives. Any reduction in the amount of Class Counsel's fees, Class Counsel's expenses, and/or the service payments to the Opt-In Class and/or Class Representative will not, however, constitute a material modification of the Settlement and will not be grounds to void the Settlement.

61. <u>No Tax Advice</u>: Neither Class Counsel nor Defendant's Counsel intend anything contained in this Settlement to constitute advice regarding taxes or taxability, nor shall anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

62. <u>Class Certification and Settlement Approval</u>:

SETTLEMENT AND RELEASE AGREEMENT

(a)     In connection with the request for Preliminary Approval of the Settlement, Plaintiff shall seek an order certifying the Settlement Class for settlement purposes only under the FLSA and Virginia wage and hour law. Defendant is consenting to the certification of the Settlement Class for settlement purposes only and contend that class certification would not be appropriate if the matter were litigated.

(b)     In the event: (i) the Court does not enter the Order specified herein; (ii) the Court does not finally approve the Settlement as provided herein; (iii) the Court does not enter a Final Judgment as provided herein, which becomes final as a result of the occurrence of the Effective Date; or (iv) the Settlement does not become Final for any other reason, this Agreement shall be null and void, and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void from the beginning. In such a case, any certified class shall be decertified, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed. In such case, the Settlement shall not be used or be admissible in any subsequent proceedings, either in this Action, with the Court, or in any other Court or forum.  In the event an appeal is filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

63.     <u>Use of Confidential Documents and Information</u>:  Plaintiff, Opt-In Plaintiffs, and Class Counsel agree to keep confidential all documents and information produced in the course of discovery and litigation of this Action, and Plaintiff and Opt-In Plaintiffs agree to return any such documents to Class Counsel. All documents and information produced in discovery in this Action, otherwise obtained in the course of the litigation of this Action, as well as all documents and information (including Settlement Class Member contact information) produced in connection with

22

SETTLEMENT AND RELEASE AGREEMENT

effectuation of this Settlement, shall only be used for purposes directly related to the effectuation of this Settlement.

64.     <u>Cooperation in Drafting</u>: The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive, arm's-length negotiations between the Parties, and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party, his, her, its, or their counsel participated in its drafting.

65.     <u>Applicable Law</u>:  All terms and conditions of this Agreement and its exhibits, if any, will be governed by and interpreted according to the laws of the State of Virginia, without giving effect to any conflict of law principles or choice of law principles.

66.     <u>Captions and Headings</u>:  Captions, headings, or paragraph titles in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision.

67.     <u>Modification</u>: This Settlement may not be changed, altered, or modified, except in writing, and signed by the Parties, and approved by the Court. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

68.     <u>Integration Clause</u>: This Settlement contains the entire agreement between the Parties relating to the resolution of the Action. All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement.  No rights under this Agreement may be waived except in writing.

69.     <u>Binding on Assigns</u>: This Settlement may be binding upon and inure to the benefit of the Parties, the Released Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

70.     Counterparts:  This Agreement shall be executed in counterparts by electronic mail or facsimile, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

71.     Interim Stay of Proceedings in Action:  The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary or appropriate to implement and complete the Settlement, pending the Final Approval Hearing.

72.     Enforceability:  When this Agreement is signed by all Parties and their attorneys of record, it shall be fully enforceable by the court pursuant to any applicable provision of law.

NEXT PAGE IS SIGNATURE PAGE

SETTLEMENT AND RELEASE AGREEMENT

Date: July 7, 2022

Tips East, LLC

By its: DAVID F. Hess   Member

Date: Jul 5, 2022

Marqui Stith (Jul 5, 2022 18:04 EDT)

Marqui Stith Sr.

Date: Jun 24, 2022

Christopher Schultz (Jun 24, 2022 18:40 EDT)

Christopher Schultz

25

SETTLEMENT AND RELEASE AGREEMENT